IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILLENNIUM LABORATORIES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| AEGIS SCIENCES CORPORATION, | § | MISC. NO. 3:11-mc-00135-K -BK |
| | § | |
| Defendant | § | Nos. 11-20451-CIV-KING and |
| | § | 11-22815-CIV-KING (consolidated) |
| v. | § | (S.D. Fla.) |
| | § | |
| ALTERNATIVE BIOMEDICAL | § | |
| SOLUTIONS, L.P. and RAY FULLER, | § | |
| | § | |
| Respondents. | § | |

**RESPONSE TO AEGIS SCIENCES CORPORATION'S
MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS,
AND RESPONDENT'S CROSS-MOTION FOR PROTECTIVE ORDER**

Respondents Alternative Biomedical Solutions, L.P. ("ABS") and Ray Fuller ("Fuller")

(collectively, "Respondents"), who are nonparties to the underlying litigation pending in the

United States District Court for the Southern District of Florida (the "Florida Litigation")

between Millennium Laboratories, Inc. ("Millennium") and Aegis Sciences Corporation

("Aegis"), file this Response to Aegis Sciences Corporation's Motion to Compel Compliance

with Subpoenas Served Upon Alternative Biomedical Solutions and Ray Fuller (the "Motion"),

and this Cross-Motion for Protective Order.

**INTRODUCTION AND SUMMARY**

1.      Aegis seeks to compel Fuller to appear for deposition and ABS to produce

documents and appear for deposition in response to two subpoenas issued out of this Court and

signed by Aegis' *pro hac vice* counsel in the Florida Litigation.[1]   Aegis would have this Court believe that Respondents are stonewalling in response to validly issued and properly tailored subpoenas.  This is not true.

    2.      Aegis' motion is remarkable for what it does <u>not</u> say:

        a.    Nowhere does Aegis mention that this Court has already deemed the subpoenas at issue to be invalid because they were not issued and signed by a person authorized to issue and sign subpoenas pursuant to Fed. R. Civ. P. 45. While Aegis was quick to request that this Court take notice of certain Orders entered by the court in the Florida Litigation, Aegis omits any reference to prior orders entered by this Court on the very issues before it.

        b.    Nowhere does Aegis mention that the "small set of limited documents" produced by ABS, in fact, includes <u>all</u> of its contracts with <u>all</u> of its desktop analyzer customers, past and present, or that such contracts conclusively establish that ABS is <u>not</u> offering below market or preferential pricing and lease terms to Millennium physicians, as alleged by Aegis,[2] but instead offers uniform pricing across the board.

        c.    Nowhere does Aegis mention the myriad attempts ABS has made to get Aegis to specify the information sought with reasonable particularity and otherwise narrow the scope of Aegis' incredibly broad subpoenas so as to prevent imposing an undue burden on Respondents.  Complying with the subpoenas as drafted would require the production of literally every scrap of paper relating to ABS' desktop analyzer business at great cost and inconvenience to

---

[1] True and correct copies of the Subpoenas are attached hereto and incorporated herein as Exhibit A and Exhibit B.
[2] *See* Aegis' Motion at p. 1; *see also* Exhibit C (Aegis' Complaint in the Florida Litigation) at ¶¶ 45-48.

**RESPONSE TO AEGIS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS,**
**AND RESPONDENT'S CROSS-MOTION FOR PROTECTIVE ORDER – PAGE 2**

Respondents, as Respondents have advised Aegis on a number of occasions. Yet Aegis has steadfastly refused to simply tell Respondents what they need to produce.

d.   And while Aegis claims that Respondents have "objected and refused to appear for deposition,"[3] nowhere does Aegis mention that Aegis itself agreed to postpone Respondents' depositions indefinitely.

3.      Respondents are not stonewalling.  But they should not have to comply with subpoenas that are invalid, fail to comply with Federal Rules of Civil Procedure, request information and documents are available from a party to the Florida Litigation, and impose an undue burden on Respondents.    Because the subpoenas are invalid, vague, and unduly burdensome, the Court should deny Aegis' Motion to Compel and grant this Cross-Motion for Protective Order.

## FACTUAL BACKGROUND

**A.      The Parties and the Underlying Litigation.**

1.      ABS is, in essence, a drug testing equipment company.  Fuller is not the owner of ABS, as Aegis' erroneously contends.  Fuller is ABS' director of sales.[4]

2.      ABS supplies a wide range of toxicology and chemistry measurement systems to clinical laboratories, pain management physicians, drug testing companies, and others within the toxicology industry.  ABS' customers use testing equipment supplied by ABS to test for the presence of drugs, i.e., to confirm that patients are taking medication as prescribed and not taking any other drugs that may interfere with the prescribed medications, among other things.

---

[3] Aegis' Motion at p. 2.
[4] See Exhibit E (Declaration of Ray Fuller).

3.      The Florida Litigation involves two competitors within the drug testing industry –

Millennium and Aegis.  Both companies provide urine drug screening and confirmatory testing

for pain management physicians.  ABS is not a *competitor* of Aegis or Millennium.  Rather, ABS

*does business with* Aegis and Millennium, as well as their competitors and non-competitors.

4.      In the Florida Litigation, Aegis and Millennium have each accused one another

of, in essence, illegal and unfair competition.  Specifically, Millennium has alleged that Aegis (a)

offers physicians illegal kickbacks in the form of "space lease" arrangements, which includes the

placement of personnel, such as specimen collectors and administrative staff, in physician's

offices; (b) provides physicians with requisition forms that result in the ordering of potentially

unnecessary tests so Aegis may obtain exorbitant amounts in reimbursement; and (c) has

disparaged Millennium by misrepresenting that Millennium lacks certain professional

accreditations and that Millennium has engaged in illegal business practices.[5]  Aegis, in turn,

alleges that Millennium (a) offers physicians illegal kickbacks in the form of free staff and

services at the physician's office; (b) offers physicians additional illegal kickbacks in the form of

equipment on terms that are free and/or below market value to enhance the physician's revenue

stream; and (c) has otherwise engaged in illegal business practices to maximize its

reimbursements and incentivize physician referrals of testing.[6]

5.      Although ABS is not a party to the Florida Litigation, Aegis' Complaint in the

Florida Litigation makes two general allegations concerning ABS:

        a.   That ABS is a mere conduit through which Millennium sells and leases

             desktop analyzers to physicians; and

---

[5] *See* Exhibit D (Millennium's First Amended Complaint in the Florida Litigation).
[6] *See* Exhibit C (Aegis' Complaint in the Florida Litigation).

      b.   That Millennium, through ABS, offers desktop analyzers at free or below market rates to physicians who agreed to use Millennium to perform confirmatory testing.[7]

**B.     The Subpoenas at Issue.**

6.     On or about September 28, 2011, Aegis' *pro hac vice* counsel in the Florida Litigation purported to issue two subpoenas that were served on Respondents (the "Subpoenas"). True and correct copies of the Subpoenas are attached hereto and incorporated herein as Exhibit A and Exhibit B.

7.     The Subpoenas purport to require Fuller and ABS' records custodian to appear for deposition, but the parties agreed to postpone the depositions indefinitely.[8]  Neither ABS nor Fuller has refused to appear for deposition, as Aegis would have this Court believe.[9]

8.     The Subpoena to ABS also contains the following broad document requests:

1.     All documents between or among Millennium and/or you related to:

      a.   Your Relationship with Millennium;

      b.   Any payments, funds, investments, gifts, or things of value transferred or between Millennium and you; and

      c.   All communications between you and Millennium.

2.     Documents sufficient to identify:

      a.   The annual number of desktop analyzers sold, leased, rented, or otherwise provided to Physicians from July 1, 2009 to the present, including and identifying the annual number and the names of Physicians who at the time were introduced to you by or were a client of Millennium;

---

[7] Ex. C (Aegis' Complaint) at ¶¶ 45-48.
[8] True and correct copies of the parties' agreements regarding depositions are attached hereto and incorporated herein as Exhibit F.
[9] Aegis' Motion at p. 4.

b.    The terms by which you have or will offer desktop analyzers and supplies to Millennium Physician clients and to non-Millennium Physician clients.

9.    The terms "relate," "relating," and "relating to" are broadly defined in the Subpoenas to mean "assess or assessing, constitute or constituting, contain or containing, describe or describing, discuss or discussing, embody or embodying, mention or mentioning, record or recording, refer or referring, reflect or reflecting, regard or regarding, report or reporting, show or showing, summarize or summarizing, support or supporting, underlie or underlying, and without limitation, in any way legal, logically, or factually connected to the matter discussed."[10]   "Communications" is also broadly defined to include "all discussions or conversations, interviews, negotiations, cable grams, mail grams, e-mails, telegrams, telexes, facsimile transmissions, cables, letters, confirmations or other forms of written or verbal intercourse, regardless of the number of persons involved and however transmitted, including reports, notes, memoranda, lists, agenda and other documents and records."[11]  "Millennium" is likewise broadly defined to include not only Millennium itself, but also "any person or entity that was recommended or introduced to [ABS] by Millennium for purposes of pain management compliance testing."[12]  "relationship" is likewise broadly defined "to encompass the broadest sence of the term[] as [it] is naturally understood, including without limitation any link, arrangement, association, connection, correlation, tie, union, contractual agreement, license agreement, referral agreement, or sponsorship," whether "business, legal, or personal . . . ."[13]

10.    Read literally, Request No. 1 calls for the production of

1.    All documents between or among Millennium [and/or any person or entity that was recommended or introduced to ABS by

---

[10] *See* Exhibit A at Ex. A thereto, p. 2.
[11] *Id*. at pp. 1-2.
[12] *Id*. at p. 2.
[13] *Id*. at p. 4.

Millennium for purposes of pain management compliance testing] and/or ABS [assessing, constituting, containing, describing, discussing, embodying, mentioning, recording, referring, reflecting, regarding, reporting, showing, summarizing, supporting, underlying, and without limitation, in any way legal, logically, or factually connected to]:

a.    ABS' [link, arrangement, association, connection, correlation, tie, union, contractual agreement, license agreement, referral agreement, or sponsorship," whether "business, legal, or personal] with Millennium [and/or any person or entity that was recommended or introduced to you by Millennium for purposes of pain management compliance testing];

b.    Any payments, funds, investments, gifts, or things of value transferred or between Millennium [and/or any person or entity that was recommended or introduced to you by Millennium for purposes of pain management compliance testing] and you; and

c.    All [discussions or conversations, interviews, negotiations, cable grams, mail grams, e-mails, telegrams, telexes, facsimile transmissions, cables, letters, confirmations or other forms of written or verbal intercourse, regardless of the number of persons involved and however transmitted, including reports, notes, memoranda, lists, agenda and other documents and records] between you and Millennium [and/or any person or entity that was recommended or introduced to you by Millennium for purposes of pain management compliance testing].

As is clear, compliance with the Subpoena will literally require the production of every scrap of paper generated by ABS in connection with its desktop analyzer business,[14] even if it has nothing to do with the underlying Florida Litigation.

**C.    Respondents' Efforts to Appease Aegis, Subject to and Without Waiving Their Objections.**

11.    On October 17, 2011, ABS and Fuller timely served their Objections and Responses to the Subpoenas.[15]

---

[14] *See* Exhibit E (Declaration of Ray Fuller).

12.     Subject to and without waiving their objections to the Subpoena, Respondents made a good faith effort to appease Aegis by producing certain of the documents requested by Aegis, despite the lack of any obligation to do so.  In the email transmitting such documents to all counsel, ABS expressly stated that it was doing so without waiving its right to move to quash the Subpoenas or for a protective order.[16]

13.     Included within the documents produced by ABS are all of ABS' contracts with its current and former customers and invoices for goods and services provided, which reflect the number of desktop analyzers sold, leased, rented, or otherwise provided to physicians and the terms of ABS' arrangements with its customers.  The documents that ABS has produced to the parties in the Florida Litigation demonstrate that ABS does not offer below market, or favorable, pricing to physicians who use Millennium for confirmatory testing, but rather offers uniform pricing across the board.  ABS has fully complied with Request No. 2 above despite the lack of any obligation to do so.

14.     Aegis has also been advised that ABS is not a mere conduit of Millennium and, in fact, has done a great deal of business with Millennium's director competitor, Aegis.  Aegis' Tennessee counsel was unaware of any business relationship between ABS and Aegis until the undersigned provided Aegis' counsel with the names and positions of ABS' primary points of contact at Aegis.[17]

15.     ABS likely has not produced all documents requested in Request No. 1 above, but that is primarily because (a) the subpoenas are invalid; (b) ABS cannot ascertain what it is being asked to produce; and (c) compliance would be unduly burdensome and expensive.  ABS has

---

[15] True and correct copies of ABS' and Fuller's Objections and Responses to Subpoenas and the cover letter transmitting same are attached hereto and incorporated herein as Exhibit G.

[16] *See* Exhibit H.  Given the confidential nature of such agreements, ABS produced them for review under a "Highly Confidential" designation, which means they may be reviewed by attorney's eyes only

[17] *See* Exhibit I.

repeatedly asked Aegis to provide ABS with reasonable notice of the documents it is being asked to produce in Request No. 1, but Aegis has refused. Aegis has also ignored Respondents' requests that Aegis agree to take certain steps requested by Respondents to avoid imposing an undue burden on Respondents, such as paying their lost earnings, attorney's fees, and costs of production.[18]

16.    On November 3 and 7, 2011, the Judge presiding over the Florida Litigation held a hearing on a motion for protective order filed by Millennium.[19]  Neither ABS nor Fuller were given notice of the hearing or an opportunity to be heard.  Millennium's motion for protective order concerned the relevance of the requested materials only.  The Court expressly stated that it was not being asked to rule on other issues, such as burdensomeness, and limited its ruling to a determination of whether the documents sought were relevant or reasonably calculated to lead to the discovery of admissible evidence.[20]

## ARGUMENT AND AUTHORITIES

**A.    The Subpoenas are Invalid and, Therefore, Cannot be Enforced.**

17.    Under Federal Rule of Civil Procedure 45, a subpoena may be issued and signed by an attorney who is either authorized to practice in the court in whose name the subpoena is issued or who is authorized to practice in the district in which the action is pending.  Fed. R. Civ. P. 45(a)(3)(A)-(B).  Thus, Rule 45 required that the Subpoenas at issue here be issued and signed by an attorney who is either authorized to practice in the Northern District of Texas (from which the Subpoenas were issued) or who is authorized to practice in the Southern District of Florida (the district in which the Florida Litigation is pending). *See* Fed. R. Civ. P. 45.

---

[18] *See, e.g.,* Exhibit G.
[19] Excerpts from the Transcripts of the 11/3 and 11/7 hearings are attached hereto and incorporated herein as Exhibit J and Exhibit K, respectively.
[20] *See* Exhibit J at pp. 11-13; Exhibit K at p. 6.

18.     This Court has already held that subpoenas identical to the ones at issue are invalid because they were issued and signed by Aegis' Tennessee attorney, Joel Galanter, who is not "authorized to practice" in the Northern District of Texas or the Southern District of Florida. *See* this Court's Orders entered on December 5, 2011, in Case Nos. 3:11-mc-00116, 3:11-mc-00117, 3:11-mc-00118, 3:11-mc-00119, 3:11-mc-00120, and 3:11-mc-00121.

19.     Because the attorney who issued and signed the Subpoenas lacked authority to do so, the Subpoenas are void and cannot be enforced.

**B.     The Subpoenas are Overly Broad, Vague, and Unduly Burdensome.**

20.     Even if the Subpoenas were not fatally defective, the Court would be required to quash or modify the ABS Subpoena because it is overly broad, vague, and imposes an undue burden on nonparties to the Florida Litigation.

### *i.     The Subpoenas are Vague and Overbroad.*

21.     Rather than issuing properly tailored document requests, Aegis opted to serve the same or similar overbroad, nonspecific document requests on a number of nonparties to the Florida Litigation.  Not surprisingly, this has spawned miscellaneous actions across the country in which the targets of the nonparty subpoenas have complained about Aegis' subpoenas and accompanying document requests.[21]

22.     Aegis' allegations against Millennium as they relate to ABS are very specific. Aegis contends that (a) ABS is a mere conduit through which Millennium offers desktop analyzers to physicians and (b) Millennium, through ABS, offers preferential pricing to

---

[21] *See, e.g.,* Case Nos. 3:11-mc-00116, 3:11-mc-00117, 3:11-mc-00118, 3:11-mc-00119, 3:11-mc-00120, and 3:11-mc-00121, in the United States District Court for the Northern District of Texas; Case No. 1:11-cv-02932-RWS in the United States District Court for the Northern District of Georgia; and Case No. 7:11-cv-00126-KKC in the Eastern District of Kentucky.

physicians who agree to use Millennium for confirmatory testing.  Yet its documents requests to ABS are extremely broad.

23.     Rather than requesting specific documents, Aegis has requested "all documents . . . related to" (i.e., that assess, constitute, contain, describe, discuss, embody, mention, record, refer to, reflect, regard, report, show, summarize, support, underlie, or are in any way legally, logically, or factually connected to) various broad categories of documents. This does not comply with Fed. R. Civ. P. 34's requirement that document requests describe the items or categories of items to be produced with reasonable particularity.

24.     Indeed, in *Williams v. City of Dallas*, 178 F.R.D. 103 (N.D. Tex. 1998), Judge Fitzwater held that request for "any and all documents . . . relating to" three individuals was "overbroad on its face" and fell far short of complying with Rule 34 because this type of request is "akin to an impermissible attempt to 'obtain every document which could conceivably be relevant to the issues in this case.'"  *Id.* at 110.  Similarly, in *Cotracom Commodity Trading Co., v. Seaboard Corp.*, the court found requests for "[a]ll documents 'relating to' Seaboard 's participation in any purchase of wheat" to be "facially overly broad, due to its use of the phrase 'relating to,'" which the court held "does not modify a specific type of document but rather all documents."  189 F.R.D. 655, 665 (D. Kan. 1999).  Like the Court in Williams, the court in *Cotracom* held that use of the phrase "relating to" made the requests "overly broad and unduly burdensome on their face."  *Id.*; *see also Kidwiler v, Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (holding that a request is not reasonably particular if it merely requests documents 'related to a claim or defense' in the litigation"); *Johnson v. Walker*, 1995 U.S. Dist. LEXIS 2671, at *2 (D.C. Ore. Feb. 28, 1995) (holding that request with term "relating to" was too broad).

25.     Compounding the problem are the expansive definitions supplied by Aegis in the document request attached to the ABS Subpoena.  ABS is not simply being asked to produce all documents relating to and communications with Millennium, but also documents relating to and communications with "any person or entity that was recommended or introduced to [ABS] by Millennium for purposes of pain management compliance testing."[22]  And ABS is being asked to produce all documents "relating to" (a) ABS' relationship with such customers, whether legal, business, or purely personal; (b) payments, funds, investments, gifts, or things of value transferred or between ABS and such customers; and (c) all communications of any kind and nature between ABS and such customers.  This is improper.

26.     As a result of the overbreadth and lack of specificity of Aegis' document requests, ABS and Fuller have not been given fair notice of what they are being asked to produce.  Instead, Aegis appears to be trying to "fish" through ABS' files, which is not allowed.  "It is one thing for a plaintiff who may have spotted a fish to throw his net in that direction; it is quite another to trawl the entire lake to see if it contains any fish at all."  *Alexander v. F.B.I.*, 186 F.R.D. 113, 119 (D.D.C. 1998).  Yet "trawling" is exactly what Aegis is doing here.  Aegis' efforts to "fish" through ABS files, rather than drafting a properly tailored document request, should not be countenanced.

### ii.     *The Florida Court's Order is Not Dispositive.*

27.     Rather than agreeing to tell ABS what Aegis wants ABS to produce, Aegis relies on an Order entered by the Court in the Florida Litigation,[23] as if such order ends the inquiry and precludes this Court from making any decisions.[24]

---

[22] *See* Exhibit A at Ex. A thereto at p. 1.
[23] Aegis attached the Order as Exhibit D to its Motion.
[24] *See* Aegis' Motion at p. 4 and Ex. E thereto.

**RESPONSE TO AEGIS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS,**
**AND RESPONDENT'S CROSS-MOTION FOR PROTECTIVE ORDER – PAGE 12**

28.     The sole issue before the Court in Florida was the relevance of the requested materials, not the propriety of the document requests themselves.[25]   Indeed, the court acknowledged that the targets of Aegis' nonparty subpoenas

> have certain arguments that they may want to raise that Millennium can't, certainly as to burdensomeness, or something being extremely confidential or a trade secret, things of that nature.  So, obviously I can't pass upon those issues that only the third parties can raise.  So, right now, I'm really talking about generally relevance, right?  When you say something is overbroad, it's another way of saying its asking for things that aren't relevant, right?  So we are basically talking about relevance here with I think all of these claims.
>
> ***
>
> And again, recognizing that there could be some bona fide objections that the laboratories themselves could make that would further narrow what they would have to produce, and recognizing that those objections are not before me and I'm certainly not going to speculate as to what their arguments might be.[26]

29.     It is one thing to hold that a document request seeks information that is relevant to pending litigation or at least appears reasonably calculated to lead to the discovery of admissible information.  It is quite another to say that a request is appropriately tailored or does not impose an undue burden on a nonparty – issues that the Florida court was not asked to decide and expressly did not decide.

**B.     The Subpoenas are Unduly Burdensome.**

   *i.     ABS and Fuller are entitled to special protection as nonparties.*

30.     In addition to being fatally defective, vague, and overbroad, the Subpoenas should also be quashed because compliance with them will be unduly burdensome and expensive.

---

[25] *See* Aegis Motion at Ex. D thereto (Order) at p. 2 (noting that "Millennium challenges the relevance of the subpoenaed materials . . . .").
[26] *See* Exhibit J (11/3 Transcript) at pp. 11-12, 13; *see also* Exhibit K (11/7 Transcript) at pp. 5-12 (essentially treating the subpoena to ABS the same as the subpoenas to the nonparty labs discussed at the 11/3 hearing).

While Aegis contends that "full discovery" should be had whenever possible, relying on Fed. R. Civ. P. 26,[27] that is not the standard with respect to nonparty discovery under Fed. R. Civ. P. 45.

31.      Rule 45 of the Federal Rules of Civil Procedure was amended in 1991 to, among other things, "clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence."  Fed. R. Civ. P. 45 advisory committee's note 1 (1991) (emphasis added).  The amendments expanded the power of attorneys to issue subpoenas, but simultaneously made explicit the accountability of counsel to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  Fed. R. Civ. P. 45(c)(1).

32.      Thus, nonparties, like ABS and Fuller, are entitled to more favorable protection than that afforded under Fed. R. Civ. P. 26.  *See Cmedia, LLC v. Lifekey Healthcare, LLC*, 216 F.R.D 387, 389 (N.D. Tex. 2003) (nonparties are entitled to protection from intrusive discovery requests served by parties to litigation); *Katz v. Batavia Mar. & Sporting Sup*., 984 F.2d 422, 424 (Fed. Cir. 1993) (nonparty status may be considered in weighing burdens imposed); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (non-parties are afforded "special protection against the time and expense of complying with subpoenas.").  The cases cited by Aegis in its Motion, which address discovery directed at parties under Fed. R. Civ. P. 26, are inapposite.

### ii.      Factors to weigh in determining if a subpoena is unduly burdensome.

33.      Rather than following cases applying Fed. R. Civ. P.  26, the factors the Fifth Circuit has held to be relevant to a determination of whether a nonparty subpoena should be quashed or modified include:

    1.      the requesting party's need for the documents,

---

[27] Aegis' Motion at p. 3.

2.      the breadth of the document request,

3.      the time period covered,

4.      the particularity with which the party describes the requested documents, and

5.      the burden imposed, including the expense and inconvenience to a nonparty to whom a request is made.

*Wiwa v. Royal Dutch Pet. Co*., 392 F.3d 812, 818 (5th Cir. 2004).   The court should also consider the expense and inconvenience to a nonparty.   *Id*.   These factors weigh in favor of quashing or modifying the Subpoenas here.

### a.      *Aegis does not need ABS' documents because the requested information is available, if at all, from Millennium.*

34.     Aegis' cannot show that it <u>needs</u> the documents and information it seeks from ABS because it can obtain such documents and information from a party to the Florida Litigation.   Courts have held that litigants should seek discovery from parties to the underlying litigation before attempting to burden nonparties with discovery requests.   *Haworth, Inc. v. Caruthers-Wallace Coutenay, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming trial court's decision to require litigant to seek discovery from opposing party before subpoenaing non-party); *Richards Rockord, Inc. v. Pacific Gas & Elect. Co*., 71 F.R.D. 388, 391 (N.D. Cal. 1993) (refusing to require non-parties to produce discovery that litigant could obtain from opponent).

35.     Rather than seeking information uniquely available to a third party, the majority of the documents and information Aegis seeks to discover, to the extent they exist, are available from Millennium – a party to the underlying Florida Litigation.   Certainly Aegis can obtain documents and information concerning "[ABS'] relationship with Millennium," "payments, funds, gifts, or things of value transferred between Millennium and [ABS]" and "communications between [ABS] and Millennium," if any, from Millennium.   Yet Aegis'

Motion makes no mention of whether such information is obtainable from an alternative source. In fact, Aegis' Motion does it address the burdens of the requested depositions and document requests at all.

36.     Commanding nonparties such as ABS and Fuller to search for and produce information readily available from a party to the Florida Litigation should not be permitted.

> **b.      The ABS Subpoena is overly broad and fails to describe the information sought with reasonable particularity.**

37.     "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818.  Indeed, "[a] party resisting facially overbroad or unduly burdensome discovery need not provide specific detailed support." *Cotracom*, 189 F.R.D. at 665.  Nevertheless, as indicated above and in the attached Declaration of Ray Fuller, the document requests in the ABS Subpoena are vague, nonspecific, and facially overbroad.  Yet Aegis has steadfastly refused to narrow the scope of the Subpoena or otherwise specify what it wants ABS to produce.

> **c.      The expense and inconvenience of compliance imposes as undue burden.**

38.     As courts have observed: "When a subpoena should not have been issued, literally everything done in response to it constitutes an 'undue burden or expense' within the meaning of Rule 45(c)(1)." *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96-C-1122, 2002 WL 1008455, *4 (N.D. Ill. May 13, 2002); *see also Molefi v. Oppenheimer Trust*, No. 03-cv-5631, 2007 WL 538547, *2 (E.D.N.Y. Feb 15, 2007) (quoting same and finding undue burden where nonparty had to expend time and money to respond to procedurally flawed subpoena).  Because the Subpoenas were issued by someone who lacked the authority to do so, they have imposed an undue burden on ABS and Fuller since day one.

39.     ABS has already undertaken a significant burden in searching for, reviewing, and producing all of the documents request in Request No. 2.   What's more, those documents conclusively prove the only two allegations in Aegis' Complaint that concern ABS are not true.

40.     In connection with its efforts to appease Aegis, ABS has spent more than 20 hours conferring about the Subpoenas, and searching for, gathering, and producing responsive documents, and has already incurred attorney's fees, costs, and expenses of more than $3,000.00 in connection with a lawsuit to which it is not a party.   ABS will be forced to undertake significant efforts and incur significant additional attorney's fees to gather, review, and produce all documents requested in the Subpoenas.[28]

41.     Specifically, to comply with the Subpoena, ABS first must determine which of its customers were recommended or introduced to ABS by Millennium.   ABS does not have a means of tracking which of its customers were recommended or introduced to ABS by Millennium, Aegis, the manufacturers of the desktop analyzers, or other source.   So, ABS would have to contact all of its customers and to determine how he, she, or it heard about ABS.[29]

42.     ABS would then have to conduct a document-by-document analysis of every scrap of paper generated in connection with ABS' desktop analyzer business, to determine, to the extent possible, if any particular document "relates to" ABS' relationship with Millennium, ABS' relationships with its customers, payments made to ABS in connection with its desktop analyzer business, and/or communications between ABS and Millennium or ABS and its customers.   ABS would also have to manually review its employees e-mail files and other

---

[28] *See* Exhibit E (Declaration of Ray Fuller).
[29] *Id.*

electronically stored information for this same purpose.  This would take weeks, if not months, to complete at a cost of tens of thousands of dollars and is completely unworkable.[30]

43.     ABS should not have to incur these additional burdens in connection with a lawsuit to which it is not a party and in the outcome of which it has no interest, particularly in light of Aegis' refusals to simply tell ABS what it wants ABS to produce.

**C.     ABS and Fuller Have Not Refused to Appear for Deposition.**

44.     Aegis' would have this Court believe that "ABS has refused to make its custodian of records and Ray Fuller available for deposition" and "failed to follow the procedural requirement of timely filing a motion to quash the deposition commanded by the subpoena."[31] This is not true.  Respondents and Aegis agreed to postpone the depositions indefinitely in light of the issues raised concerning the document requests in the Subpoena.[32]  One hopes that this is simply a case where the right hand (Richard A. Stewart, Aegis' Houston attorney who signed the motion), does not know what the left hand (Joel T. Galenter, Aegis' Tennessee attorney who agreed to postpone the depositions indefinitely) is doing.

**D.     ABS and Fuller are Entitled to Lost Earnings, Costs, and Attorney's Fees.**

45.     An attorney has a duty to avoid imposing an undue burden or expense on a person subject to a subpoena.  Fed. R. Civ. P. 45(c)(i).  When an attorney violates this duty, the issuing court "must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." *Id*.  And, while the award of sanctions rests firmly within a court's discretion, sanctions are avoided only where the subpoenaing party made a good faith effort to agree on terms of overbroad subpoena duces tecum.  9 James Wm. Moore, et al., Moore's Federal Practice § 45.33 (3d ed. 2010).

---

[30] *Id.*
[31] Motion at p. 4.
[32] *See* agreements at Exhibit F.

46.     In this case, ABS and Fuller timely objected to the Aegis' document requests as being overly broad, vague, and unduly burdensome.  Despite these objections, Aegis has not made any effort to narrow the scope of the subpoena, tell ABS what it needs to produce, or otherwise agreed to alleviate the burdens imposed on ABS and Fuller.  All Aegis has offered to do is use the cuts and stitches applied by the court in the Florida Litigation,[33] which, again, only addressed relevance and not the failure to describe the requested documents and information with reasonable particularity or burdensomeness.

47.     Given that the Subpoenas were never enforceable to begin with, Aegis' insistence that ABS and Fuller comply by producing an incredibly broad array of documents and information – relating to not only Aegis and Millennium, but all of ABS' customers – without making any real effort to tell ABS what to produce or avoid imposing an undue burden has been unreasonable.  Aegis should not be rewarded for its antagonistic and uncompromising behavior.

WHEREFORE, PREMISES CONSIDERED, ABS and Fuller respectfully request the Court to deny Aegis' Motion to Compel, to quash or modify the Subpoenas, order Aegis to reimburse Respondents for their lost earnings, costs, and reasonable attorney's fees, and grant Respondents such other and further relief to which they may be justly entitled.

Dated: December 15, 2011.

---

[33] *See* Aegis' Motion at "Certificate of Good Faith Conference."

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 745-5400 Phone
(214) 745-5390 Fax

By: */s/ J. Brian Vanderwoude* _____
    J. Brian Vanderwoude
    Texas Bar No. 24047558
    bvanderwoude@winstead.com

**ATTORNEYS FOR RESPONDENTS
ALTERNATIVE BIOMEDICAL SOLUTIONS,
L.P. and RAY FULLER**

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2011, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record, all of whom have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ J. Brian Vanderwoude* _____
J. Brian Vanderwoude